## LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE, Plaintiff-in-Error, v. VIOLA AYERS, Defendant-in-Error.—281 S. W. (2d) 75.

Western Section. May 25, 1954.

Petition for Certiorari denied by Supreme Court, September 6, 1954.

Carroll C. Johnson, Jr., (Waring, Walker, Cox & Lewis, of counsel), of Memphis, for plaintiff in error.

A. G. Burkhart, Jr., and Blount & Burkhart, all of Memphis, for defendant in error.

CARNEY, J.   This is an appeal-in-error from a judgment of the Circuit Court of Shelby County, Tennessee, awarding plaintiff below, Mrs. Viola Ayers, a judgment for $500 on an industrial insurance policy for complete and permanent loss of plaintiff's right foot.

Plaintiff contended that she was engaged as a carpenter helping her husband in the construction of a new house when she stepped back into a hole in the floor left for the purpose of installing a floor furnace, and injured her right leg in such a manner that traumatic arthritis developed, resulting in the complete and permanent loss of the use of said right leg and right foot.  The policy sued on was issued and delivered on May 19, 1952, and the accident is alleged to have occurred on or about July 1, 1952.

The defendant, insurance company, denied liability substantially on the following grounds:

"(1)  That the plaintiff did not receive the fall and injury as contended by her.

"(2)  That the plaintiff's damages to her foot were not the sole result of accidental injuries, if she did receive such fall and that she did not have traumatic arthritis.

"(3) That the plaintiff had been guilty of fraud in the procurement of such insurance policy in that she gave false answers on the application by giving negative answers concerning her confinement in the hospital, treatment for her enumerated diseases, including paralysis, and that at the time of the signing of said application on May 5, 1952, the plaintiff had been in at least three hospitals complaining of, among other things, paralysis of her right hand and right leg."

The application was not made a part of nor attached to the policy, and paragraph 2 of the Standard Provisions of said Policy provided as follows:

"No statement made by the applicant for insurance not included herein shall avoid the Policy or be used in any legal proceeding hereunder."

The case was tried to a jury and the Trial Court submitted to the jury three issues of fact, which issues and the finding of the jury thereon are as follows:

"(1) Did the plaintiff wilfully and fraudulently give false answers and misleading the insurance company at the time the application for insurance was signed and at the time the Proof of Loss was filled out? Answer: No.

"(2) Did the plaintiff give written notice of the accident to the Insurance Company twenty days after July 1, 1952, or if it was not reasonably possible to give such notice, then was notice given as soon as reasonably possible? Answer: Yes.

"(3) Does the plaintiff now have complete paralysis of the right let and foot due solely to an accident sustained after the Policy issued? Answer: Yes."

Upon the verdict of the jury the Trial Judge entered judgment in favor of the plaintiff in the amount of $500.

62

After motion for a new trial was seasonably filed and overruled, plaintiff-in-error has filed three Assignments of Error in this cause:

"(1) It was error for the Trial Judge to refuse to sustain the motion of the plaintiff-in-error made at the conclusion of all the evidence, for a directed verdict in its favor.

"(2) There was no material evidence to support the jury's finding in issue No. 1 that the plaintiff did not wilfully and fraudulently mislead the defendant at the time the application was signed and thereafter in the Proof of Loss.

"(3) It was error for the Trial Judge not to grant a continuance as the defendant had a doctor who was a material witness that was out of town on the day of trial."

Assignment of Error #3 relating to the refusal of the Trial Court to grant a continuance due to the absence of the defendant's witness, Dr. Byron S. Talley, must be overruled. The testimony of Dr. Talley would have related only to plaintiff's physical condition; he saw and examined her only once; a letter was by consent introduced showing what his testimony would have been; his testimony was merely cumulative to that of defendant's witness, Dr. J. O. Gordon, and it does not appear that the Trial Court abused his discretion in refusing to grant the motion of defendant for a continuance. Northcross v. Taylor, 29 Tenn. App. 438, 197 S. W. (2d) 9.

We next consider Assignment of Error #2 that there was no material evidence to support the jury's finding on issue No. 1 that the plaintiff did not wilfully and fraudulently mislead the defendant at the time the application was signed and thereafter in the Proof of

Loss. The plaintiff is a woman of very limited educational advantages, having been only to the Third Grade, and she testified that she did not fill out either the application or Proof of Loss, but that the same were filled out by the Company's agent, who wrote the insurance; that she did not read the application as filled out, and that the agent did not ask her anything except in substance if she was in good health, which she thought she was, and in which she was corroborated by her neighbor, the witness, Emily Owens.

The Company's agent, O. M. Demuth, testified that he himself filled in the application and that he customarily asked the applicants their name, age, and "in order to save time, if the person being insured has ever suffered any serious disease or is now under the care of a doctor for a serious disease—that covers everything—if they have ever been rejected by an insurance company. If they have been rejected usually we cannot give them a policy unless they have got over the trouble, whatever it was." The agent also said that he would not say that the plaintiff read the policy over, though frequently some people did. The agent also testified that he approached Mrs. Ayers about insurance: "Usually people have to sell some of them on the idea of insurance. I explained the policy. She said she would be willing to buy it." The application was written up and completed at the home of plaintiff.

The Proof of Loss filed by plaintiff and which was filled out by the Company's agent, Demuth, dated December 10, 1952, recites that plaintiff had not been confined in a hospital. Plaintiff insisted that she told the agent that she had been to the hospital.

Hospital records showed that the plaintiff was in St. Joseph Hospital in Memphis, Tennessee, from November

9, 1947, to November 13, 1947, and the final diagnosis as shown by the hospital records was hysteria manifested by blindness in left eye, and backache and psychoneurosis.

The records of John Gaston Hospital of Memphis, Tennessee, showed that the plaintiff came to the out-patient clinic in April 1950 stating that the paralysis in the right arm was improving. The hospital record referred to the fact that a year ago plaintiff's brother's body was being brought back from overseas, and that another brother also killed overseas was to be brought back within the next few weeks. The hospital records showed that the plaintiff was worrying considerably over this trouble and was advised not to attend the funeral. The hospital records also showed that some four years before the plaintiff had been at John Gaston Hospital making similar complaints of paralysis in the right hand and leg. The diagnosis by the hospital interns was chronic psychoneurosis.

The hospital records of the Baptist Hospital, of Memphis, Tennessee, showed that plaintiff was at the hospital on July 7, 1952, complaining of intermittent attacks of weakness in the right leg and that plaintiff had been in the Baptist Hospital from July 18, 1951, through July 25, 1951, and the record showed this was for gall bladder trouble and possible anxiety neurosis.

The jury saw and observed the plaintiff and her witnesses upon the witness stand, they saw and observed the witnesses of the defendant in open Court, the jury had before it and considered the written application of plaintiff for insurance and the Proof of Loss made by plaintiff, and also had before it and considered the records of the various hospitals of Memphis and under a proper charge of the Court reached the conclusion that

the plaintiff did not give wilful and fraudulent false answers to the insurance company in order to procure the contract of insurance. We think there was material evidence upon which the jury could reasonably make such findings, and, accordingly, Assignment of Error #2 must be overruled.

By Assignment of Error #1 the defendant insists that the plaintiff had been guilty of material misrepresentations which increased the risk of loss to the defendant company in that the application for insurance stated that plaintiff had never been under treatment in any clinic, dispensary, hospital, or asylum, and that she had never had paralysis, when the records of the hospitals in Memphis showed expressly to the contrary, and rely upon the cases of Life & Casualty Ins. Co. v. King, 1917, 137 Tenn. 685, 195 S.W. 585; Metropolitan Life Ins. Co. v. McGowan, 1926, 2 Tenn. App. 341; Little v. Washington Nat. Ins. Co., 1951, 34 Tenn. App. 593, 241 S. W. (2d) 838; Norvill v. Mutual Benefit Health & Accident Association, 1931, 14 Tenn. App. 396.

Defendant also contends that the plaintiff is bound by the statements contained in said application which she signed whether she actually read the same or not, and relies upon the cases of DeFord v. National Life & Accident Ins. Co., 1945, 182 Tenn. 255, 185 S. W. (2d) 617; Beasley v. Metropolitan Life Ins. Co., 1949, 190 Tenn. 227, 229 S. W. (2d) 146; Standard Life Ins. Co. of the South v. Strong, 1946, 19 Tenn. App. 404, 89 S. W. (2d) 367.

The plaintiff insists that Paragraph 2 of the standard provisions of the policy prevents the consideration of the statements contained in said application by the defendant company to avoid liability. For convenience, we repeat the provisions of Paragraph 2, to-wit:

"2. No statement made by applicant for insurance not included herein shall avoid the policy or be used in any legal proceeding hereunder."

Admittedly, the application was not attached to or made a part of the policy sued on in this cause. Also, it appears to us that without the introduction of the written application there is no proof in the record of material misrepresentations by the plaintiff.

Upon the trial below, upon proper objection by the plaintiff, the application was excluded by the Trial Court. On the authority of Adams v. Manhattan Life Ins. Co., 24 Tenn. App. 171, 141 S. W. (2d) 930, the Trial Court changed his ruling and admitted the introduction of the application only for the purpose of showing alleged fraud and for no other purpose.

We are cited to no case in Tennessee construing the sentence contained in Paragraph 2 of the Standard Provisions mentioned above; however, we think the language is clear and unambiguous, and we think the Trial Court properly held that the statements contained in the application could be considered only on the question of fraud in the procuring of insurance and that the provisions of the application for insurance cannot be considered for the purpose of avoiding liability under the terms of the insurance contract.

We have read all of the cases cited in defendant's brief and are of the opinion that none of them are controlling on the matter at Bar, and we are of the opinion that the Trial Judge correctly overruled the motion for a directed verdict by the defendant, and, accordingly, Assignment of Error #1 must also be respectfully overruled.

Judgment will be entered in this Court in favor of the defendant in error, Viola Ayers, against the plaintiff in

error, Life and Casualty Insurance Company, in the amount of $500 with interest from October 5, 1953. The plaintiff-in-error, Life and Casualty Company, is taxed with the costs of this appeal in error.

Avery, P. J., and Bejach, J., concur.